IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID SKALKA, Receiver of the Outlier Funds Settlement Fund;<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES SCHWAB & CO., INC., a corporation; and JAY PATNEAUDE, an individual;<br><br>Defendants. | 8:24CV158<br><br>MEMORANDUM AND ORDER |

Before the Court is Defendant's Motion to Compel Arbitration. Filing No. 10.[1] For the reasons set forth herein the Court grants Defendant's Motion and stays further proceedings.

## BACKGROUND

Relevant to the present motion, Plaintiff's Complaint alleges that Jesse Hill ("Hill") was a registered investment adviser with the Nebraska Department of Banking and Finance ("Department"). Filing No. 1. On May 20, 2019, Hill organized First SOJO, LLC ("SOJO") as a single member limited liability company. Filing No. 1 at 3. On June 23, 2021, SOJO registered with the Department as an investment adviser and included Hill as an investment adviser representative. Filing No. 1 at 3. This was approved by the Department. In its application to the Department,

---

[1] There is a split of authority on the issue, but judges within the District of Nebraska have held that motions to arbitrate are non-dispositive and can be ruled on by a magistrate judge. *See All. Grp., Inc. v. Zurich Am. Ins. Co.*, No. 8:21CV188, 2021 WL 5325883, at *1 (D. Neb. Nov. 16, 2021) ("This Court agrees with those courts holding that 'a motion to compel arbitration is a non-dispositive motion' and can be decided by a magistrate judge.").

SOJO represented it would act as an investment advisor for Outlier Fund I, LP ("Outlier I") and Outlier Fund II, LP ("Outlier II"). Filing No. 1 at 3. As alleged in the Complaint, Outlier Fund GP, LLC ("Outlier GP") is the general partner for Outlier I and Outlier II. Filing No. 1 at 3, 24.

Plaintiff's complaint also alleges that, prior to SOJO being approved by the Department, and on or about July 16, 2019, Hill submitted an application for a personal account and an options trading account with Schwab. Filing No. 1 at 6. In this application, Hill made certain representations. Schwab approved the application. Filing No. 1 at 7. After SOJO was approved by the Department and in November 2021, Hill, on behalf of Outlier I, submitted an application for Level 3 options trading with Schwab. Filing No. 1 at 7. According to the complaint, Hill made a number of representations in this application that Plaintiff alleges are inconsistent with the personal application submitted in July 2019. Filing No. 1 at 7-8. Schwab approved this application. Filing No. 1 at 8. Also, in November 2021, Hill submitted an application for a Schwab account for Outlier II. Filing No. 12-1 at 49-75. Hill completed applications allowing both Outlier I and Outlier II to add options trading and margins to their account. Filing No. 12-1 at 31-48, 76-93. All applications were approved.

According to the Complaint, if an individual wished to invest with SOJO, they would purchase limited partnership interests in Outlier I or Outlier II. Filing No. 1 at 3. The funds were then deposited into Schwab accounts. Plaintiffs allege that, ultimately, the investors in Outlier I and Outlier II lost more than $3.6 million. Filing No. 1 at 10.

Though not attached to the Complaint, Defendant attached the relevant agreements with Schwab to its motion. Filing No. 12-1 at 6, 51. As discussed below, Plaintiff does not dispute the existence of these agreements but does dispute Hill's ability to enter into agreements on behalf of Outlier I and Outlier II and, thus, the validity and enforceability of the agreements.

According to the express terms of the agreements, by submitting account applications for the relevant accounts, the applicant agreed to the terms of certain agreements with Schwab. Filing No. 12-1 at 21 (regarding Outlier Fund I); 66 (regarding Outlier Fund II) ("You also agree that you have received and read a copy of the attached Schwab One Account Application Agreement for Non-Incorporated Organizations ("Application Agreement"), which contain predispute arbitration clauses. You acknowledge and agree that this arbitration clause is a binding obligation of both the Organization and you with respect to your capacity as an Authorized Individual on the account(s).") All the relevant agreements include a binding arbitration provision. The arbitration provision states, in relevant part:

> Section 13: Arbitration Agreement. Any controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab or the breach of any such agreements, instructions, or authorizations; (ii) the Account, any other Schwab account or Services; (iii) transactions in the Account or any other Schwab accounts; (iv) or in any way arising from the relationship with Schwab, its parent, subsidiaries, affiliates, officers, directors, employees, agents or service providers ("Related Third Parties"), including any controversy over the arbitrability of a dispute, will be settled by arbitration.
>
> This arbitration agreement will be binding upon and inure to the benefit of the parties hereto and their respective representatives, attorneys-in-fact, heirs, successors, assigns and any other persons having or claiming to have a legal or beneficial interest in the Account, including court-appointed trustees and receivers.
>
> . . .

Filing No. 12-1 at 28, 74.[2]

---

[2] Plaintiff argues the Declaration of James J. Vihstadt should not be considered when ruling on the present motion as it lacks foundation and violates the parole evidence rule. The Court does not find it necessary to rule on these issues as the only portions of the declaration the Court considers are not disputed by Plaintiff and only authenticate certain

3

On December 28, 2022, the State of Nebraska ex rel. Kelly Lammers, Director of the Nebraska Department of Banking and Finance filed suit in the District Court of Lancaster County, Nebraska against Hill, First SOJO, JT Equity, Outlier GP, Outlier I and Outlier II. Filing No. 18-1 at 5. On April 12, 2023 a Motion for Appointment of Receiver was filed in the state court action. Filing No. 18-1 at 32. On June 7, 2023, a Lancaster County District Court Judge entered an order appointing David Skalka as receiver for First SOJO, JT Equity, Outlier GP, Outlier I and Outlier II. Filing No. 18-1 at 38-46. Skalka filed an Acceptance and Acknowledgement as Receiver on June 8, 2023. Filing No. 18-1 at 48-49.

On May 1, 2024, Plaintiff filed the instant Complaint in his capacity as "Court Appointed Receiver of the Outlier Funds Settlement Fund, regarding the assets of Outlier Fund I, LP, Outlier Fund II, LP, JT Equity Trading, LLC, Outlier Fund GP LLC, and First SOJO Capital Group, LLC and the rights of their investors." Filing No. 1 at 1. In this Complaint, Plaintiff sets forth: claims (1) and (2) alleging negligence as to Charles Schwab & Co., Inc. ("Schwab") and Jay Patneaude, Vice President – Financial Consultant for Schwab ("Patneaude")[3]; (3) alleging violation of Section 10(b) of the Securities and Exchange Act of 1934 as to Schwab; claim (4) alleging a violation of 15 U.S.C. § 78j as to Schwab; (5) alleging a Nebraska Consumer Protection violation as to Schwab; and (6) alleging aiding and abetting breach of fiduciary duty as to Schwab and Patneaude. These allegations primarily relate to the investigation performed by Schwab and Patneaude regarding Schwab's approval of Hill's applications for certain accounts. Plaintiff alleges there

---

Schwab documents. Pursuant to the statements in the affidavit the Court finds Vihstadt has laid the necessary foundation to authenticate the Schwab documents.

[3] The allegations and claims set forth against Patneaude are based on his role "as financial advisor working for Schwab." Filing No. 1 at 15-16, 24-26. As such, and absent any argument from the parties that the claims against Patneaude should be analyzed differently than those against Schwab, the Court will analyze the claims against Patneaude concurrently with the claims against Schwab.

are three accounts at issue with Schwab—the Outlier I account, Outlier II account, and Hill's personal account.

## ANALYSIS

### I. Standard of Review

In deciding a motion to compel arbitration where the parties rely on matters outside the pleadings, the Court applies a standard akin to summary judgment. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) ("The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet. But courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure."); *see also Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018). Therefore, the Court will "view[] the evidence in the light most favorable to the nonmoving party" and grant the motion if "'there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" *DeLuna v. Mower Cty.*, 936 F.3d 711, 716 (8th Cir. 2019) (quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010).

### II. Arbitration Agreement

As noted above, the Agreement contains an arbitration provision that generally requires any claims "arising out of or relating to" any agreement with Schwab, any Schwab services, transactions in a Schwab account or arising from a relationship with Schwab, or any of its employees to be brought in arbitration. Defendant therefore seeks an order compelling arbitration of the parties' dispute pursuant to the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §§ 1 *et seq*.

The FAA provides "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and

5

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The plain language of the applications and agreements indicate the Schwab accounts at issue involve a transaction involving commerce.

In reviewing a motion to compel arbitration, the Court must determine "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). The Court must grant a motion to compel arbitration "if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008). Whether a valid arbitration agreement exists is a question of state contract law. *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009).

### A. Validity of Arbitration Agreement

Plaintiff sets forth an array of arguments as to why the undersigned should deny the pending motion to compel arbitration. More specifically, Plaintiff argues the agreement is not valid and enforceable because: (1) Hill was not authorized to enter into these agreements on behalf of Outlier I and Outlier II and (2) Plaintiff, as a receiver, did not sign the applications and, as such, is not bound by the agreements.

When determining the validity of an arbitration agreement, ". . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The party seeking enforcement of the contract has the burden of establishing the existence of a valid, legally enforceable agreement, consisting of an offer,

6

acceptance, and some meeting of the minds. *Equestrian Ridge Homeowners Ass'n v. Equestrian Ridge Ests. II Homeowners Ass'n*, 308 Neb. 128, 140 (2021); *Ballou v. Asset Mktg. Servs., LLC,* 46 F.4th 844, 857 (8th Cir. 2022) (holding "party seeking to compel arbitration bears the burden to prove a valid contract.). The Court, rather than the arbitrator, addresses the question of whether Hill had the authority to enter the contracts. *Granite Rock Co. V. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); *GP3 II, LLC v. Litong Cap., LLC*, 35 F.4th 1124, 1127 (8th Cir. 2022) ("Because a signor's authority to bind a purported principal is an issue of contract formation, the issue of Green's authority to bind GP3 was within the district court's province to decide.").

Plaintiff argues there is a genuine issue of material fact as to whether Hill could have entered into the relevant agreements on behalf of Outlier I and Outlier II. Plaintiff contends because Outlier GP was the general partner for Outlier I and Outlier II, Hill in his individual capacity could not enter into the agreements with Schwab.

Both parties agree, and evidence does not suggest otherwise, that Outlier GP was the general partner of Outlier I and Outlier II. Filing No. 1; Filing No. 11 at 3. Both parties also agree that Outlier GP was controlled exclusively by Hill. Filing No. 1 at 3; Filing No. 19 at 3. Therefore, Hill is the representative authorized to enter into agreements for Outlier I and Outlier II. Any argument that Hill could not enter the contracts with Defendant because he did not list "Outlier GP" on the application is without merit. A review of the applications makes clear that Hill listed Outlier I and II as the named organizations, checked the box that he was the "primary authorized individual," Hill signed the applications as "General Partner," and checked the box that the organization is "a Limited Partnership, and the undersigned represent all General Partners of the Limited Partnership." Filing No.12-1.

7

Further, it is undisputed that Hill represented himself as an individual authorized to act on behalf of Outlier I and Outlier II when completing the applications, and, thus, entering into the contracts at issue with Schwab. At the least, the undisputed facts establish that Hill, the individual who controlled Outlier GP, clearly induced a reasonable third person to believe he had the authority to act on behalf of Outlier I and Outlier II, when he signed the applications on their behalf and made explicit statements indicating he was authorized to act on their behalf, in various portions of the applications and in various manners.[4] Plaintiff has submitted no evidence to the contrary. *See i.e.* RM Campbell Indus., Inc. v. Midwest Renewable Energy, LLC, 294 Neb. 326, 337 (2016) (discussing actual, implied, and apparent authority of agents and stating that "[a]pparent authority is authority that is conferred when the principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon an agent's apparent authority. Apparent authority gives an agent the power to affect the principal's legal relationships with third parties" and, further, stating "For apparent authority to exist, the principal must act in a way that induces a reasonable third person to believe that other person has authority to act for him or her.").

Plaintiff next argues that Skalka, as a receiver is not bound by the agreements that Hill entered on behalf of Outlier I and Outlier II. Filing No. 17 at 15. He argues this for two reasons: (1) Hill engaged in fraud and the entities in question are now "separate legal entities with rights and duties," and (2) he is acting on behalf of creditors and investors, neither of whom signed the arbitration agreements at issue. Filing No. 17 at 15-21. It appears Plaintiff wants the best of

---

[4] The undersigned recognizes that the question of whether an agency relationship exists presents a factual question. And that the present situation is unique in that Hill is both the principal and agent. However, the undisputed facts not only establish that Hill controlled Outlier GP but, also that Hill made express representations to Schwab regarding his ability to enter into the applications and agreements regarding Outlier I and Outlier II which Schwab relied on. Hill, as the principal (manager of Outlier GP), caused Schwab to reasonably believe that Hill, as an agent, had the authority to act on behalf of Outlier GP.

8

both worlds—he *is* the receivership entities for the purposes of prosecuting claims, but he *is not* the receivership entities to the extent it limits or burdens his claims. The Court is not convinced by Plaintiff's arguments. Rather, the issue is straightforward. Under Nebraska law, "a receiver is held to stand in the shoes of the entity in receivership and holds the property by the same legal right and title as the person for whose property he or she is receiver." *Behrens v. Blunk*, 284 Neb. 454, 459-60 (2012); *State v. Security State Bank of Eddyville*, 116 Neb. 521, 406 (1928). While the receivership order does not include a definition of "receivership", the state court appointed Plaintiff as receiver for First SOJO Capital Group, LLC, JT Equity Trading, LLC, Outlier Fund GP LLC, Outlier Fund I, LP and Outlier Fund II, LP. Filing No. 18-1 at 39. The receivership order merely indicates Plaintiff, as receiver, represents the listed entities regarding legal actions. There is no mention of his appointment with regard to any creditors or investors. Standing in the shoes of those entities, he is bound by the arbitration agreements they entered. Plaintiff's argument that he cannot be subject to arbitration because he is acting on behalf of creditors and investors are without merit. *See generally,* Neb. Rev. Stat. §§ 25-1087; 25-1088.

For the reasons set forth herein, the undersigned finds the arbitration agreement is valid and enforceable.

### B. Scope of the Arbitration Agreement

Plaintiff also argues the claims at issue fall outside of the scope of the arbitration agreement.

A court must "liberally construe" a valid arbitration agreement. *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.")).

When resolving this issue, a court must first determine "whether an arbitration clause is broad or narrow." *Parm*, 898 F.3d at 874 (citing *Unison Co. Ltd. V. Juhl Energy Development, Inc.*, 789 F.3d 816, 818 (8th Cir. 2015). "If a clause is broad, the liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration as long as the underlying factual allegations simply touch matters covered by the arbitration provision." *Parm,* 898 F.3d at 874 (internal citations and quotes omitted).

When an arbitration provision covers claims "arising out of" or "relating to" an agreement, such arbitration clause is broad. *Parm,* 898 F.3d at 874. Here, consistent with this language, the Court finds the arbitration provision is broad. *See Id.* at 875 (concluding an arbitration clause was broad when the clause stated "if a dispute of any kind arises out of this Agreement . . ." and, further, citing numerous authority supporting such conclusion). When applying a broad arbitration provision, a court is to determine whether "the underlying factual allegations simply touch matters covered by the arbitration provision." *Parm,* 898 F3d at 875 (quotation omitted). When answering this question, the court is to "look past the labels the parties attach to their claims to the underlying factual allegations and determine whether they fall within the scope of the arbitration clause." *Id.* Further, when a valid agreement between the parties exists, as the Court has already determined, "[t]he party resisting arbitration bears the burden of showing either that the arbitration provision is invalid or that it does not encompass the claims at issue. *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2002).

Plaintiff argues the present claims relate to duties Defendant would have regardless of any contractual agreement, namely violation of federal laws and regulations, and thus, fall outside of the arbitration provision. But, the crux of all of Plaintiff's claims relate to Schwab's, or its employee's, obligations relating to the Outlier I and Outlier II applications. The arbitration provision extends to ""[a]ny controversy or claim arising out of or relating to (i) [the Account Agreement], any

10

other agreement with Schwab, an instruction or authorization provided to Schwab or the breach of any such agreements, instructions, or authorizations; (ii) the Account, any other Schwab account or Services, (iii) transactions in the Account or any other Schwab account; (iv) or in any way arising from the relationship with Schwab. Filing No. 12-1 at 28, 73. Every claim brought by Plaintiff arises out of the relationship with Schwab. Had the Schwab accounts not existed, there would be no claims made against Schwab. The Plaintiff's claims plainly fall within the scope of the arbitration agreement.

For the aforementioned reasons, the undersigned finds that the claims set forth in the Complaint fall within the scope of the arbitration agreement.

### C. Right to Repudiate

Finally, Plaintiff argues he can repudiate the binding arbitration clause because the arbitration agreement is an executory contract that had not been performed at the time Plaintiff was appointed receiver. This argument is also fails. First, this argument would completely invalidate the express language of the agreement, which bound "receivers" to the agreement to arbitrate. Second, all caselaw relied upon by Plaintiff is either non-binding or distinguishable from the present facts. Moreover, the undersigned is unaware of any binding caselaw which stands for the proposition Plaintiff proposes.

For the reasons set forth herein,

IT IS SO ORDERED:

1. Defendant's Motion to Compel Arbitration, Filing No. 10, is granted. The parties are directed to proceed to arbitration in accordance with the terms of their agreements.
2. This case is stayed pending arbitration.
3. The parties shall file a joint status report regarding the progress of arbitration every ninety (90) days beginning May 29, 2025
4. The Clerk of the court is directed to set an initial status report deadline of May 29, 2025.

Dated this 28th day of February, 2024.

BY THE COURT:

*s/ Jacqueline M. DeLuca*
United States Magistrate Judge